**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| NEXTIER COMPLETION SOLUTIONS INC., <br><br>         Plaintiff, <br><br>   v. <br><br> DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br>         Defendants. | Civil Action No. 4:21-mc-01278 |

---

**PLAINTIFF NEXTIER COMPLETION SOLUTIONS' REPLY IN SUPPORT OF**
**MOTION TO TRANSFER RELATED CASE (DKT. 1)**

---

## <u>INTRODUCTION</u>

In accordance with the local rules and in the interests of conserving judicial resources, NCS moved to transfer its related action (Case No. 4:21-cv-1328) to Chief Judge Rosenthal's Court.  As explained in NCS's motion, two cases concerning the same patent-at-issue—the *Nexus* and *Vigor* cases[1]—were recently assigned to and coordinated before Judge Rosenthal, and NCS understands that the Houston Division expects related cases to be similarly adjudicated by a single court.

Importantly, DynaEnergetics ***does not oppose this relief***.  As stated in its response: "DynaEnergetics does not oppose reassignment to the Honorable Chief Judge Rosenthal for any adjudication that is to occur in this district."  *See* Response, Dkt. 2 at 1.  Instead, DynaEnergetics response voices concern about the scheduling order entered by Judge Rosenthal in the related *Nexus* and *Vigor* cases.  Although NCS believes that judicial economy is best served by coordinating schedules between the pending cases, NCS recognizes that this is a decision that will be made by Judge Rosenthal.  Moreover, NCS is not opposed to adjustments that would accommodate DynaEnergetics' scheduling concerns, including allowing DynaEnergetics more time to serve its infringement contentions.  Given that DynaEnergetics is not opposed to the substance of NCS's motion, any concerns about a forthcoming schedule and coordination with the *Nexus* and *Vigor* cases are simply premature and can be resolved following reassignment.

Additionally, NCS respectfully notes that DynaEnergetics' arguments about co-pending litigation in the Western District of Texas are also irrelevant to the current motion.  Although

---

[1] *See* Case No. 4:21-cv-280 and Case No. 4:21-cv-283.

DynaEnergetics recently added NCS as a defendant to a case pending in the WDTX, whether or not this action should be transferred to that district should be resolved by Judge Rosenthal after full briefing on this issue—including an analysis of "judicial and litigant economy." *See, e.g., Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (transfer depends on "considerations of judicial and litigant economy, and the just and effective disposition of disputes").  Indeed, in response to being named in a suit pending in the WDTX, NCS will be moving to transfer that action to the Houston Division of the SDTX, where both DynaEnergetics and NCS are headquartered and where the overwhelming majority of third-party witnesses and evidence is located.  As a result, when the convenience of the parties and witnesses is fully taken into account, NCS believes the Court will justifiably conclude that the SDTX is the proper district to hear the parties' dispute.

## ARGUMENT

### A.  NCS Believes the Cases Should be Coordinated but Will Defer to the Court.

Although NCS will of course defer to the Court on matters of scheduling and coordination, to the extent the Court wishes to address that issue through this briefing, NCS respectfully submits that coordinating the claim construction schedule with the *Nexus* and *Vigor* cases makes logical sense without disadvantaging DynaEnergetics in any way.

In particular, DynaEnergetics will already have to identify and brief claim terms for construction regardless of any case coordination.  Similarly, DynaEnergetics will have to argue those terms before Judge Rosenthal at the claim construction hearing regardless of whether NCS participates or not.  In this regard, coordination of the claim construction process will allow DynaEnergetics to avoid the extra expense of additional claim construction briefing and an

2

additional claim construction hearing while, simultaneously, allowing NCS to meaningfully participate in that phase of the litigation.

Moreover, given that the meaning of a patent's claim terms depends on the patent specification, the prosecution history and contemporaneous extrinsic evidence—and is **_independent_** of any accused product—DynaEnergetics cannot logically complain that it needs technical discovery of NCS's own products in order to define and construe the terms in DynaEnergetics' own patent. Accordingly, coordinating the claim construction process with the *Nexus* and *Vigor* cases will not impose any burden on DynaEnergetics.

In contrast, if claim construction is not coordinated, it is likely that the Court will need to expend resources reviewing additional claim construction briefing and holding an additional claim construction hearing. Given the Court's interest in construing terms consistently across all three pending cases, it is beneficial for the Court to hear all such arguments at the same time and during the same hearing before arriving at definitions that could, otherwise, impact NCS's efforts to construe those same terms in a subsequent claim construction process.

To be clear, however, NCS will accept the schedule that the Court thinks is best for this case. At a minimum, DynaEnergetics does not oppose a transfer of NCS's case to Judge Rosenthal. *See* Response, Dkt. 2 at 1 and 7. While NCS's motion proposed coordinating the schedules across all three related cases for purposes of conserving judicial economy, NCS will gladly work with DynaEnergetics to propose a schedule that fits with its answer date. For example, NCS will gladly allow DynaEnergetics to serve its infringement contentions after that answer date. To the extent that NCS and DynaEnergetics are not able to reach an agreement, NCS will accept the Court's decision as to what the schedule should be.

3

**B. DynaEnergetics' Transfer Complaints are Premature and Irrelevant.**

Although legally irrelevant to the pending motion, DynaEnergetics' devotes a large portion of its response to arguing that this case should be pending in the WDTX.  *See* Response, Dkt. 2 at 2–6.  However, DynaEnergetics has not moved to dismiss NCS's action or to transfer it to the WDTX, and that issue is therefore not currently before the Court.  Moreover, in the event DynaEnergetics does move to dismiss or transfer, NCS respectfully disagrees that the SDTX is an improper forum for this dispute and maintains that the parties' and witnesses' substantial ties to Houston—including the fact that both parties are headquartered here in Houston—will warrant denying any attempt to relocate this dispute to a different judicial district.

For example, even the first-to-file rule is not the sole arbiter of the proper forum for a dispute: "Even when two cases substantially overlap, however, courts may exercise their discretion and decline to apply the rule based on 'compelling circumstances.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (*citing Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)).  In such situations, the Fifth Circuit applies the 28 U.S.C. § 1404(a) convenience factors, which provide that a that a change of venue is necessary when appropriate for the convenience of the parties, to determine when "compelling circumstances" may override the first-to-file rule.  *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602-03 (5th Cir. 1983); *see Hart*, 290 F. Supp. 3d at 633.

In short, compelling circumstances warrant rejecting DynaEnergetics' attempt at forum shopping and keeping the parties' dispute in the SDTX.  In particular: (1) NCS is headquartered in Houston, its documents are located in Houston, its engineering and design staff are located in Houston and its accused products are designed, developed, tested, and manufactured in Houston; (2) DynaEnergetics' US-based operations are headquartered here in Houston along with relevant

4

documents and witnesses; (3) relevant third-parties, including G&H Diversified Mfg., LP, which manufactures components of the accused product, are headquartered here in Houston; and (4) DynaEnergetics has already availed itself of the SDTX to litigate other cases involving the same patent-at-issue.  As a result, DynaEnergetics has no legitimate basis to seek to litigate this case in a different venue that is farther away and more inconvenient for virtually all of the parties and witnesses involved.

Against that backdrop, DynaEnergetics' complaints regarding the co-pending WDTX case are both meritless, and more importantly, irrelevant to the current motion pending before the Court.

### Conclusion

Because DynaEnergetics does not oppose reassignment of NCS's declaratory judgment action to Chief Judge Rosenthal, NCS respectfully requests that its motion to transfer this case should be granted.

Dated: June 4, 2021                   Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Amir Alavi*
Amir Alavi, *Attorney-in-Charge*
State Bar No. 00793239
Southern District ID No. 20919
Steven Jugle
State Bar No. 24083280
Southern District ID No. 3633066
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**
1221 McKinney, Suite 2500
Houston, Texas 77010
Tel: (713) 655–1101
Fax: (713) 655–0062
aalavi@azalaw.com
sjugle@azalaw.com

**ATTORNEYS FOR PLAINTIFF**
**NEXTIER COMPLETION SOLUTIONS INC.**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the June 4, 2021, a copy of the foregoing was served on the following party electronically through the U.S. District Court, Southern District of Texas ECF system to all counsel of record, all of whom are Filing Users of the Court's Electronic Filing System.


*/s/ Amir Alavi*
Amir Alavi

6